I'm Robert Jobe and I'm appearing today on behalf of the petitioner Giancarlo Massetti. In reversing the immigration judge's grant of asylum and withholding of removal, the Board offered just one justification. The immigration judge found that Mr. Massetti had suffered harm that rises to the level of past persecution, and she found that even if he hadn't, he has a well-founded fear of suffering harm that would rise to the level of persecution in the future. The Board didn't disturb that finding. The Board's decision hinges on a single factual finding, and an assumption of law I suppose as well, and that is that the corruption that Mr. Massetti was actively ferreting out in the GDF, the agency for which he worked in Italy, was, quote, aberrational. And on that particular factual point, I think the Board is just flat-out wrong. Now we cited one particular document in our briefing, but I think it's worth quoting once again. This is at page 265 of the administrative record. It's a working paper on corruption in Italy, and it relates to the time period that's at issue in this case. It says, After 1992, the Clean Hands investigation of political corruption brought about the most serious political crisis in the history of the Italian Republic. The investigation reached the highest levels of the public administration and affected most of the area's state's activities. More than 500 former parliamentarians were implicated, many former ministers, five former premiers, thousands, that says thousands, of local administrators and public functionaries, the Army, the Customs Service, which is responsible for investigating financial crimes in general, the main publicly owned companies, and even sectors of the magistrate itself. There's just absolutely no way that you can say that that kind of corruption is aberrational. The GDF, which is the organization that Mr. Massetti worked for, his sworn statement indicates that in 1994, there was a district attorney in Milano that was engaged in an investigation of the GDF itself that resulted in the arrest of 250 GDF members for corruption. Again, that's just not aberrational. I have a question that is on a slightly different point. You started, and I'm sort of mulling this over and going back to where you started, which was to say that the BIA did not disturb the findings or the legal conclusion that a harm suffered rose to the level of persecution. But the BIA didn't say anything about that one way or another. They did say credibility is not an issue. They did speak to that specifically. If we were to agree with you that on account of political opinion has been shown, wouldn't we still have to remand this to the BIA to determine whether the harm rose to the level of persecution? Because they actually didn't decide that question one way or another. They never got there in the analysis. I don't think so. I'd have to go back and look at the government's brief in this case, but I think not. I don't think the government raised this issue in their brief to the board.  I don't think it was challenged before the board. And if it wasn't challenged before the board, then I would say, no, there's no point in remanding it. Let me ask you that. We don't have an adoption of the IJ's determination, and so that's easy case number one. Instead, we have more of an almost legal discourse about the extent of corruption that one has to prove. So piggybacking on Judge Graber's question, the governing document that we're reviewing is the BIA decision. If we were to agree with your position that they were incorrect, there's nothing in the BIA decision that would mandate a grant. I just don't see it in the document. I look at it somewhat differently. It seems to me the immigration judge laid out certain legal findings. I mean, among those findings, she said, you know, there's harm that rises to the level of past persecution, and he has a well-funded fear of such harm as well. And she went on to say, and also it's clearly on account of political opinion. Now, the board, when it reviewed that decision, it disagreed with the immigration judge on that one point, that it's not on account of political opinion. And it didn't disagree with the board on that, on the issue about the severity of the harm. It didn't agree either. It was silent. It made no decision, I guess, because it's a little bit like we often take the first door out. Someone will raise eight issues, and we say, well, the first one disposes of the case. So we don't have to deal with all the other questions. It's not — I wonder if it's correct to say that that counts as agreeing with those other issues. I'm saying they didn't disturb that finding. And from our perspective, yes, the inference would be that they agreed with it, or they didn't find it to be clearly erroneous. Well, why isn't the more precise inference that they felt no need to think about it at all? Yeah. I understand that perspective. And I don't think that my position is clearly correct in any way. But my view is that the board — in part, I'd have to go back and look at what the government argued. Because it seems to me if the government argued this point and the board simply skipped over it and it decided the case on other grounds, I think our position would be stronger. What about this approach? Obviously, the board has agreed with credibility finding. Right. That means then, of course, that the board did, and we also must, take Mr. Massetti's testimony as true. Correct. If we were to conclude that the level of persecution that he describes compels a finding that it is a level of persecution, do we need to remand? Well, again, I think it goes back to — Irrespective of what the board might find, we would disagree because under my hypothesis, at least, whatever they say, we're going to say this lies in the level of persecution because the evidence compels it. I don't think you can do that if Judge Graber is correct that the board chose not to decide the question. Because if they chose not to decide the question, then this Court obviously can't decide that. It's a Ventura problem. Right. It's a Ventura problem. They can't decide that. You know, I'm trying to figure out the boundaries of Ventura in a case like this. If we thought the evidence compelled it, then we don't care what they say. If they expressly had reserved from deciding the question, clearly Ventura would control. And if they implicitly avoided the question, if they reserved from deciding the question, again, I think Ventura would control. Yeah, so — I think — again, I think it goes back to what the government argued in its brief, and that may be dispositive here because I think if the government didn't raise this issue to the board, then the precedents of this Court would say that the government shouldn't have another chance to argue that before the board. And as you stand here right this moment, you can't recollect. I can't recollect.  Yeah, I need to look at the government's brief. You may be able to find it as you sit down and wait for the rebuttal. In that regard, you would then treat it essentially as a waiver on that point. Is that what you're driving? Yes. I mean, appellate procedure. And the way this Court has looked at that in other cases, it says basically the government shouldn't have another bite at the apple. They had their opportunity to make that argument. They didn't make any such argument. And it shouldn't go back for them to be able to make such an argument when they — Which would be distinguished from a case where they made four arguments and the board just decided to address a simple legal argument. Right. Yeah. Exactly. Exactly. I think what I should do is reserve the balance of my time. Thank you, Mr. Jones. We'll hear from the government. Good morning, Your Honor. Your Honors, Nicole Nardone, attorney for the respondent of the United States. If I may, I'd like to just address the question that the Court was discussing earlier. The government did indeed reserve the question of the issue of whether or not Mr. Mazzetti experienced past persecution. In his brief to the board? In the brief to the board, they did. Do you have a citation to that? Yes. If you look at administrative record, page 65 in particular is where the argument begins. Page 65. Hang on a second. I'm a little slow. OK. So this is the government's brief to the board. OK. That's correct. And the brief does state that — essentially argues that these incidents did not rise to the level of past persecution. Rather, they were minor incidents. Argument A, failed to establish. A1, respondent failed to show that the minor harm he suffered rose to the level of persecution. Right. You got it. Indeed, the government also did reserve this issue in its brief to this Court in its conclusion on page 24 of our brief. We state that in the event the Court overturns, the board's decision is to remand for an initial administrative determination regarding whether or not the incidents of harm rose to the level of past persecution, as the board did not address that issue. The sole issue before the Court is whether substantial evidence in the record supports the conclusion that Mr. Massetti was not persecuted on account of political opinion by the Italian government or by a group that the government is unable or unwilling to control. In order to overcome the board's finding, the petitioner must establish that the record evidence is so compelling that no reasonable fact-finder could fail to find the requisite level of persecution. Mr. Massetti has failed to meet this burden. Two cases are illustrative of what this Court considers to be a whistleblowing claim under the INA. In Grava, the Court held that whistleblowing against corrupt officials may constitute political activity on account of political opinion, when the alleged corruption is so inextricably intertwined with government operation. And the Court held that the salient question is whether whistleblowing actions were directed at the government institution itself, rather than at corrupt individuals. We would argue that this case is not like Grava or like Hassan, another case that was addressed in the briefs. In Grava, the Court noted in finding that a law enforcement official in the Philippines had indeed exposed a government-wide smuggling operation, the Court noted, importantly, two key facts, one being that the government failed to punish the corrupt individuals  that they were instruments of the government itself. Similarly, in Hassan, the Court found that the petitioner's actions in writing several articles about a high-level official and then this official who thereafter took actions against her, the Court found in determining there was persecution, the Court noted several key facts, again, that the police and members of the government were indifferent to the official's actions and, secondly, that the official had openly said that he had effective influence over ministers and high officials in the government. The Court there found that, clearly, this woman's writing these articles regarding this high-ranking official's impunity, essentially, in the government, that her action in doing so was clearly challenging an institutionalized level of corruption. Now, here I'd like to point out that, in this case, the petitioner, in his own reply brief, notes the fact that the Italian government has taken widespread action against corruption in Italy. They do it periodically. Right. In other words, they've not yet succeeded. Yes, I understand that there's a question of whether or not they have succeeded. But the point is that, clearly, Mr. Messetti's actions were not intended to influence or not against the Italian government itself, because the Italian government itself has spoken out publicly against and has prosecuted persons for corruption in its own government. It is actively taking action to control this issue. Let me tell you what my problem with the BIA decision is, and you can help me out on this. It's this statement. He has not demonstrated that there is pervasive government corruption in Italy. And it's never been my understanding that you have to take on the entire country when you bring a political persecution claim. In other words, I don't understand why he would need to show the whole government or the whole government is or is not responding. There's a very discreet portion of the government here that's at issue. So what's the legal basis for the statement made by the BIA? Well, I think what the BIA is getting at is that, kind of getting back to the case in Grava, and I think the Court was trying to understand and explain the holding there. There, the Court in Grava was saying that there essentially was whistleblowing against corrupt individuals. And that whistleblowing was essentially an action by the petitioner indicating his political opposition to the activities and the policies of the government itself. Here, we can't say that Mr. Massetti's actions in expressing his opposition to corruption was also similarly an expression of his opposition to the government's opinion. You almost made his case by that statement, it seems to me. If you go back to Grava, they say, official retaliation against those who expose and prosecute government corruption may, in appropriate circumstances, be persecution on account of political opinion. What would he have to do, in your view, to meet that standard? Well, I think we have to look at what persecution means. I mean, the very term persecution is activity that the government is either condoning, is either acting out themselves. I mean, they're persecuting an individual based on political opinion. Or they are condoning the activities of another group that's persecuting someone based on their political opinion because they're either unable or unwilling to control that behavior. And in this case, I don't think Mr. Massetti can argue that the Italian government is either unable or unwilling to control the behavior of the corrupt individuals. That's a separate part of the analysis, isn't it? I mean, it seems like you're melding together the question of whether he's been persecuted with whether whatever it is that's happened to him has happened on account of his political opinion. And it may very well be that what's happened to him on account of his political opinion is private action or is public action but not very bad or whatever. But why isn't it still on account of his political opinion? I understand what you're saying. I think that these issues do, in this context, become rather inextricably entwined themselves. But I think ultimately, if the court does decide today that indeed Mr. Massetti was persecuted based on his political opinion, then there still needs to be a question. The board would still need to determine the issue of whether or not the actions by these corrupt individuals were actions that the government was either unwilling or unable to control because that is still part of the ultimate test to determine whether or not he is entitled to asylum. One of the things that strikes me about this case on this record of government corruption and on this record of the things that he did and the things that were then done to him if this were a case in Asia if this were a case in any other part of the world but Western Europe this would be open and shut. I've never seen a case with this kind of corruption in any case outside of Western Europe where the IJ or the BIA said that this was not on account of political opinion. Your Honor, I haven't done such an evaluation of the other cases but I'm thinking on the facts of the case the way that I see them it occurs to me that if we're claiming that this individual is indeed a refugee from his country what we're saying essentially is that he can take no refuge there he can find no protection by his own government and I don't think that Mr. Messina can assert that. I mean there are also a number of... That's the next piece of the case though that's what we would send it back presumably for the BIA to consider but we're only looking at one narrow slice of it so even if we were to say whatever happened was on account of that doesn't necessarily mean that he will obtain relief. Yeah, I think the issue becomes tricky in light of the way that it's explained the way that the concept of whistleblowing is explained in decisions because what it requires is that the person's actions in whistleblowing were directed at the government institution itself and I think that if that's the question that we're asking I don't think we can argue that Mr. Massetti's actions were taken against the Italian government itself because the Italian government itself has indeed shown that they also are in opposition the majority of them are in opposition to this corruption that they have in their government so therefore that would be our position. Thank you, Counselor. I can understand your position and I believe you have a short amount of rebuttal time remaining. Obviously I just want to go back to Judge Graver's question because that seems to be a much bigger question than this particular case and it seems to me that if we're going to just assume that the Board skipped over that question that it remanded so that they can make another decision addressing those questions that sort of invites the Board to engage in piecemeal decision making and that's a problem for somebody like Mr. Massetti who filed his application for asylum almost seven years ago next month it will be seven years the longer he gets to stay he's not here, he was deported he was deported, I'm sorry he immediately fled from Italy and he went to France and he's waiting for a decision on this case and where is he now? he's in France what's our choice under Ventura when there's an issue that is preserved apparently and the BIA consciously doesn't reach it how can we possibly reach it after Ventura? I think the rule should be that for the Board to preserve an issue like that they have to do so expressly for me it's sort of like what the court said the en banc court said in Briones with regard to credibility if the Board is silent on credibility we presume the person is credible but if the Board expressly says that it's reserving making a decision with regard to credibility we'll make no such presumption for purposes of this case while it's in the Court of Appeals we'll presume credibility but then it has to be remanded back because the Board expressly reserved making a decision on that point but where the Board doesn't expressly do so I think in order to avoid piecemeal decision making, especially in cases like this where people can actually be deported and forced to wait for a decision we all know how long it takes for these things to work through but look at the practical consequence let's just say we agree with that proposition and if we did it might properly assist your client but the only result of that will be that in every BIA decision you'll have a little asterisk or a footnote and it'll simply say all other issues argued have been preserved so we'd be right back where we started as a practical matter, wouldn't we? I don't think so, because that's not what the Board has done in the credibility context they often just assume credibility and decide cases without expressly reserving that's a factual issue that plays out in a legal context these are legal determinations that they there's like a four step process that they need to go through but they don't need to you can lose on any one of them you need all of them to win so if they pick one and then say we reserve everything else I don't see how in the long run that would change the calculus from the petitioner's point of view it forces the Board to be clear about whether they are in fact reserving or whether they've rejected the government's argument on a particular point because here what the Court is saying is we should just assume that the Board reserved on this question and didn't reject the government's position but we don't know that and the Board should be clear as to whether or not it has rejected the government's position on this point or reserved from making a decision on that point and the only way that we can force them to do that is to tell them to be express about it Thank you counsel I appreciate the arguments of both sides and the case just argued is submitted
judges: Graber, McKeown, W. Fletcher